UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>YESENIA ALVAREZ,<br><br>　　　　　Defendant. | Case No. 15-cr-00243-JSC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 6 |

Defendant Yesenia Alvarez moves to suppress a blood sample taken from her following her arrest for driving while under the influence of marijuana. (Dkt. No. 6.) Alvarez contends that although she consented in writing to the blood draw, her consent was coerced and not voluntary and therefore the blood draw results must be suppressed. Having considered the parties' arguments, including those raised in the supplemental briefing, and having had the benefit of oral argument on September 10, 2015, the Court DENIES the motion to suppress.

**BACKGROUND**

On March 27, 2014, United States Park Police Officer April Ramos arrested Alvarez in the Fort Funston area of San Francisco, California for driving under the influence of marijuana following a traffic stop and field sobriety test. After Alvarez was placed in handcuffs, Officer Ramos stated "we're going to go down to the station to take your blood and that's how you can

1   prove you're not high."[1]  (Dkt. No. 9-1 ¶¶ 3-4 (Decl. Yesenia Alvarez).)   Alvarez was not advised

2   of her *Miranda* rights or any consequences of a refusal to submit to a blood test.  (*Id*. at ¶¶ 2, 5.)

3   Officer Ramos thereafter took Alvarez to the San Francisco Police Department Mission Street

4   Station.  At the station, Alvarez was instructed to sign several forms, but the contents were not

5   explained to her.  (*Id*. at ¶ 7.)   One of the forms was a "Blood Test Request by Peace Officer"

6   which states at the bottom:

> I, Ysenia Alvarez, do hereby consent to the withdrawal of a blood sample from my body;    acknowledge that I have selected the blood test.  I further certify that I am not a person who is afflicted with a heart condition and/or using an anticoagulant under the direction of a physician.

Alvarez's handwritten signature appears just below this statement. (Dkt. No. 8-1 at 10.[2])  Alvarez was not advised that she could refuse to take the blood test.  (Dkt. No. 9-1 at ¶ 8.)  Alvarez was released from custody a few hours after her blood was taken (Dkt. No. 7 at 7), and was thereafter charged with operating a motor vehicle under the influence of drugs and possession of a controlled substance.  (Dkt. No. 4.)

---

[1] Officer Ramos submitted two declarations in support of the government's opposition to the motion to suppress. (Dkt. Nos. 8-1 & 12-1.)  In her first declaration, Officer Ramos attests that her standard practice for obtaining consent—which she has no reason to believe she deviated from here—"is to first summarize the chemical sample refusal laws to the arrestee shortly after I place him or her under arrest, in order to determine at the scene whether the arrestee will consent to providing a sample and where I should transport the arrestee next.  After I have transported the arrestee. . . I then read the arrestee the full formal chemical test admonition verbatim from a printed form." (Dkt. No. 8-1 at ¶ 5.)  In her second declaration, Officer Ramos attests that upon arrest she advises arrestees that "the law requires the arrestee to provide a blood sample" and she then asks for "verbal confirmation" that the arrestee is "willing to provide a sample." (Dkt. No. 12-1 at ¶ 5.)  Officer Ramos does not identify what source of law requires consent or describe the legal consequences of a failure to consent. (*Id*.)  Once Officer Ramos arrives at the police station, prior to the blood draw, her practice is to read the California DMV Chemical Test Admonition which advises individuals of the consequences of their refusal to submit to a blood test under California law. (*Id*. at ¶ 6; Dkt. No. 12-1 at 5.)  For purposes of this motion, however, the Court accepts Alvarez's testimony that she was not advised that she could not consent; nor advised of any consequences for a failure to consent.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**LEGAL STANDARD**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment– subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). It must prove that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

**DISCUSSION**

The government concedes that the blood sample taken from Alvarez was a warrantless search that implicates the Fourth Amendment. It contends that the search was nonetheless reasonable as Alvarez consented to the search verbally and in writing. Alvarez insists that her consent was involuntary under the totality of the circumstances.

Before reaching the question of voluntariness, the Court must determine whether the government has met its burden of demonstrating that Alvarez gave verbal and written consent. As for verbal consent, Alvarez attests that Officer Ramos told her they were going to the police station for a blood draw. While Alvarez does not unequivocally declare that it was not posed as a question, because the government bears the burden of proving consent the Court cannot conclude without an evidentiary hearing that it has met its burden to demonstrate verbal consent was given. It is undisputed, however, that Alvarez provided written consent to the blood draw. (Dkt. No. 8-1 at 10.) Thus, the question is whether Alvarez's written consent was voluntary.

Courts consider five factors (sometimes referred to as the "*Jones*" factors) to determine whether consent was freely and voluntarily given: "(1) whether the defendant was in custody; (2) whether the arresting officer had his guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained." *United States v. Vongxay*, 594 F.3d 1111, 1119-20 (9th Cir. 2010) (citing *United States v. Jones,* 286 F.3d 1146, 1152 (9th Cir.

2002).). "All five factors need not be satisfied in order to sustain a consensual search." (*Id.*) Alvarez contends that the *Jones* factors weigh in her favor: she was in custody at the time her consent was given, she was not given a *Miranda* warning, she was not told she had the right to refuse to consent, and she was not told that a warrant could be obtained. According to Alvarez, these factors—combined with her youth and relative lack of experience with law enforcement—demonstrate coercion.

The Court disagrees. While Alvarez was in custody at the time of her written consent, there is no suggestion that Officer Ramos threatened Alvarez in any way, let alone by having her gun drawn. Further, although Alvarez attests that no one explained the contents of the consent form to her, she does not declare that she did not read it or that she did not understand it. Nor does she indicate that she lacked adequate time to review the form. *See United States v. Lindsey*, 877 F.2d 777, 783 (9th Cir. 1989) (affirming the district court's holding that a consent was consensual where the officer did not threaten the defendant, and where the defendant had the opportunity to consider whether to withdraw his consent while the officer obtained a consent form). That Alvarez's consent was given while she was already under arrest does not itself undermine the voluntariness of the consent, *see Lindsey*, 877 F.2d at 783 ("[a] person in custody is capable of giving valid consent to search"), nor does the lack of a *Miranda* warning, *see United States v. Ritter*, 752 F.2d 435, 439 (9th Cir. 1985) ("[t]he absence of *Miranda* warnings is not, however, dispositive of whether an individual voluntarily consented to a search). Finally, that Officer Ramos did not tell Alvarez that the officer could obtain a search warrant actually supports a voluntariness finding. *See Vongxay*, 594 F.3d at 1120 (holding that the *Jones* search warrant factor is satisfied in favor of voluntary consent when the defendant is *not* told that a search warrant could be obtained); *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000) ("application of the fifth [warrant] factor depends on the particular circumstances of the case and [] hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner"); *see also United States v. Patayan Soriano*, 361 F.3d 494, 504-05 (9th Cir. 2004) ("[e]ven assuming, however, that some of the statements were made in a threatening manner so as to imply the futility of withholding consent, when probable cause to justify a warrant exists, the weight of

4

the fifth [warrant] factor is significantly diminished.").

The primary issue here is Alvarez's testimony that she was not told that she had the right to decline consent. She did not have the *unfettered* right to decline consent. Under federal law, "[w]hoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction." 18 U.S.C. § 3118(a). If a driver nonetheless refuses to actually consent to the blood draw, the driver can be prosecuted for the refusal. 36 C.F.R. § 4.23(c)(2). According to Alvarez, no consequences were explained to her.

But no case holds, or least Alvarez has not cited one, that where a defendant signs a written form affirmatively stating "I, [defendant], do hereby consent to the withdrawal of a blood sample from my body," that written consent is insufficient because the officer did not advise the defendant that she did not have to sign the form. Even when the lack of the advisement is considered in connection with Alvarez's custody status, age, and lack of prior contacts with law enforcement, there is simply no caselaw to support Alvarez's urging of a constitutional violation. This omission is unsurprising given that the Ninth Circuit recently noted: "[w]e doubt that the Constitution requires any admonition to be given to DUI suspects." *United States v. Harrington*, 749 F.3d 825, 830 (9th Cir. 2014). Indeed, Alvarez argues that Officer Ramos should have warned her that if she did not consent she could be prosecuted under federal law for not doing so. That warning is arguably far more coercive than what Alvarez attests happened here: The government obtained consent via the written consent form without expressly explaining that if she withheld her consent she could be prosecuted for doing so.

Unlike federal law, under California law it is not a crime to refuse consent; instead, the refusal can be used against the driver in any subsequent DUI prosecution. *Harrington*, 749 F.3d at 827. Thus, in the alternative, Alvarez argues that if Officer Ramos' testimony is accepted, Alvarez's blood draw results must still be suppressed because she testified that it is her practice to warn of the consequences under California law of refusing consent. Not so. *Harrington*, the sole case upon which Alvarez relies, merely held that it violates due process to prosecute a suspected

5

1  DUI driver under federal law for refusing to consent to a blood test when the arresting officer
2  incompletely warns the driver that the failure to consent could be used against the driver in court.
3  In other words, the officer misled the driver about the legal consequence of his choice to refuse
4  consent.  749 F.3d at 830.  Here, in contrast, Alvarez consented in writing and is not being
5  prosecuted for a failure to consent.  *Harrington* is simply inapplicable.

6  Alvarez's argument that implied consent laws are themselves insufficient to convey
7  consent misconstrues the issue.  Under the circumstances here, the issue is not whether submission
8  to a blood draw under an implied consent law is sufficient in and of itself to confer consent, *see*
9  *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013); *State v. Butler*, 232 Ariz. 84, 88 (Ariz. 2013), but
10 rather, whether Officer Ramos' failure to advise Alvarez of her right to refuse consent (or, more
11 precisely, the consequences of refusing consent) rendered her actual written consent involuntary.
12 Under the totality of circumstances, and accepting Alvarez's testimony as true, the government
13 has met its burden of showing that Alvarez's written consent was freely and voluntarily given.
14 Officer Ramos did not threaten Alvarez to obtain her written consent, nor did she use any force to
15 procure consent, and Alvarez had adequate time to decide whether to provide her written consent.

## CONCLUSION

For the reasons discussed above, Alvarez's motion to suppress is DENIED.

**IT IS SO ORDERED.**

Dated: October 5, 2015

*[signature]*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

6